CENTER FOR DISABILITY ACCESS
Raymond Ballister Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
Dennis Price, Esq., SBN 279082
Ariel Vento, Esq., SBN 311070
Mail: 8033 Linda Vista Road, Suite 200
San Diego, CA 92111
(858) 375-7385; (888) 422-5191 fax
dennisp@potterhandy.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Brian Whitaker**,<br><br>  Plaintiff,<br><br>  v.<br><br>**Kyo-Ya Hotels & Resorts, LP**;<br><br>  Defendants | **Case No**. 4:21-cv-00011-DMR<br><br>**First Amended Complaint For Damages And Injunctive Relief For Violations Of:** Americans With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Brian Whitaker complains of Kyo-Ya Hotels & Resorts, L.P., a Delaware Limited Partnership ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is substantially limited in his ability to walk. He suffers from a C-4 spinal cord injury. He is a quadriplegic. He uses a wheelchair for mobility.

2. Defendant Kyo-Ya Hotels & Resorts, LP, a Delaware Limited Partnership owns and operates the Palace Hotel located at 2 New Montgomery St., San

1

Francisco, California, currently and at all times relevant to this complaint.

3. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of other Defendants are ascertained.

**JURISDICTION:**

4. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

5. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

6. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**PRELIMINARY STATEMENT**

7. This is a lawsuit challenging the reservation policies and practices of a place of lodging. Plaintiff does not know if any physical or architectural barriers exist at the hotel and, therefore, is not claiming that that the hotel has violated any construction-related accessibility standard. Instead, this is about the lack of

information provided on the hotel's reservation website that would permit plaintiff to determine if there are rooms that would work for him.

8.   After decades of research and findings, Congress found that there was a "serious and pervasive social problem" in America: the "discriminatory effects" of communication barriers to persons with disability. The data was clear and embarrassing. Persons with disabilities were unable to "fully participate in all aspects of society," occupying "an inferior status in our society," often for no other reason than businesses, including hotels and motels, failed to provide information to disabled travelers. Thus, Congress decided "to invoke the sweep of congressional authority" and issue a "national mandate for the elimination of discrimination against individuals with disabilities," and to finally ensure that persons with disabilities have "equality of opportunity, full participation, independent living" and self-sufficiency.

9.   As part of that effort, Congress passed detailed and comprehensive regulations about the design of hotels and motels. But, as importantly, Congress recognized that the physical accessibility of a hotel or motel means little if the 61 million adults living in America with disabilities are unable to determine which hotels/motels are accessible and to reserve them. Thus, there is a legal mandate to provide a certain level of information to disabled travelers.

10.   But despite the rules and regulations regarding reservation procedures, a 2019 industry article noted that: "the hospitality sector has largely overlooked the importance of promoting accessible features to travelers."

11.   These issues are of paramount important. Persons with severe disabilities have modified their own residences to accommodate their unique needs and to ameliorate their physical limitations. But persons with disabilities are never more vulnerable than when leaving their own residences and having to travel and stay at unknown places of lodging. They must be able to ascertain whether those places work for them.

**FACTUAL ALLEGATIONS:**

12. Due to plaintiff's disability, he is unable to, or seriously challenged in his ability to, stand, ambulate, reach objects mounted at heights above his shoulders, transfer from his chair to other equipment, and maneuver around fixed objects.

13. Thus, Plaintiff needs an accessible guestroom, and he needs to be given information about accessible features in hotel rooms so that he can confidently book those rooms and travel independently and safely.

14. Plaintiff planned on making a trip in October of 2020 to the San Francisco, California, area.

15. He chose the Palace Hotel located at 2 New Montgomery St., San Francisco, California because this hotel was at a desirable price and location.

16. Due to Plaintiff's condition, he is unable to, or seriously challenged in his ability to, stand, ambulate, reach objects, transfer from his chair to other equipment, and maneuver around fixed objects.

17. Thus, Plaintiff needs an accessible guestroom, and he needs to be given information about accessible features in hotel rooms so that he can confidently book those rooms and travel independently and safely.

18. On September 14, 2020, while sitting bodily in California, Plaintiff went to the Palace Hotel reservation website at https://www.marriott.com/hotel/travel/sfolc-palace-hotel-a-luxury-collection-hotel-san-francisco seeking to book an accessible room at the location.

19. This website reservation site was either maintained and operated by the defendant or was run by a third party on the defendant's behalf. It was the official online reservation system for this hotel.

20. Plaintiff found that there was insufficient data or details about the accessible guestrooms to give him the ability to independently assess whether any of the guestrooms worked for him.

21. There were four sources of information on the website that provided

information about the accessible features. But these areas provided very little in the way of actual information and detail.

22. Merely labelling something "accessible" is a conclusion or opinion and does not permit an independent assessment but require a wheelchair user to hope that the hotel knows what it is talking about.

23. This meager information falls far short of what the ADA requires and does not even come close to meeting the ADA requirement that hotels must not only identify but "*describe* accessible features in the hotels and guest rooms offered through its reservations service *in enough detail* to reasonably permit individuals with disabilities to *assess independently* whether a *given* hotel or guest room meets *his or her* accessibility needs." 28 C.F.R. 36.302(e)(1)(ii) (emphasis added to key words).

24. For example, Plaintiff requires a raised toilet so he can safely transfer from his wheelchair to the toilet. Without this feature, he risks falling. The website does not mention if the toilet has this feature.

25. As another example, Plaintiff has had tremendous difficulty with using lavatory sinks in the past because the plumbing underneath the sink was not wrapped with insulation to protect against burning contact to his knees. Here, the Hotel reservation website provides no information about whether the plumbing is wrapped with insulation to prevent contact.

26. As another example, Plaintiff needs to know that the bed has a compliant clear space next to it so he can safely transfer from his wheelchair to the bed. Here the Hotel website provides no information about the accessibility of the clear space next to the bed.

27. Plaintiff does not need an exhaustive list of accessibility features. Plaintiff does not need an accessibility survey to determine of a room works for him. Plaintiff, like the vast majority of wheelchair users, simply needs a handful of features to be identified and described with a modest level of detail:

- For the doors, Plaintiff simply needs to know if he can get into the hotel room and into the bathroom. This is a problem that has created tremendous problems for the Plaintiff in the past. A simple statement that the hotel room entrance and interior doors provide at least 32 inches of clearance is enough to provide Plaintiff this critical piece of information about whether he can fit his wheelchair into the hotel rooms.
- For the beds themselves, the only thing Plaintiff needs to know (and the only thing regulated by the ADA Standards) is whether he can actually get to (and into) the bed, i.e., that there is at least 30 inches width on the side of the bed so his wheelchair can get up next to the bed for transfer. This is critical information because Plaintiff cannot walk and needs to pull his wheelchair alongside the bed.
- For the desk where Plaintiff will eat and work, Plaintiff simply needs to know that it has sufficient knee and toe clearance so that he can use it. A simple statement like "the desk provides knee and toe clearance that is at least 27 inches high, 30 inches wide, and runs at least 17 inches deep" is more than sufficient. Because Plaintiff is confined to a wheelchair, he needs to know this information to determine if the desk is accessible to and useable by him.
- For the restroom toilet, Plaintiff only needs to know two things that determine if he can transfer to and use the toilet; (1) that the toilet seat height is between 17-19 inches (as required by the ADA Standards) and (2) that it has the two required grab bars to facilitate transfer.
- For the restroom sink, the Plaintiff two things that will determine whether he can use the sink from his wheelchair: (1) can he safely get his knees under the toilet? To wit: does the sink provide the knee clearance (27 inches high, 30 inches wide, 17 inches deep) and is any plumbing under the sink wrapped with insulation to protect against burning contact?  The second thing is whether the lavatory mirror is mounted at a lowered height so that

wheelchair users can sue it. A simple statement like: "the lavatory sink provides knee clearance of at least 30 inches wide, 27 inches tall and 17 inches deep, all of the under-sink plumbing is wrapped, and the lowest reflective edge of the mirror is no more than 40 inches high" would suffice.

- Finally, for the shower, Plaintiff needs to know only a handful of things: (1) what type of shower it is (transfer, standard roll-in, or alternate roll-in), (2) whether it has an in-shower seat; (3) that there are grab bars mounted on the walls; (4) that there is a detachable hand-held shower wand for washing himself and (5) that the wall mounted accessories and equipment are all within 48 inches height.

28. This small list of items are the bare necessities that Plaintiff must know to make an independent assessment of whether the "accessible" hotel room works for him. These things comprise the basics of what information is reasonably necessary for Plaintiff (or any wheelchair user) to assess independently whether a given hotel or guest room meets his or her accessibility needs.

29. Plaintiff first found that there was no specific information about the accessibility of any part or portion of the hotel other than the individual guestrooms. While many hotels will identify and describe accessible features of the parking, public paths of travel, doors, registration desk and pool, this hotel's reservation website provided no information whatsoever.

30. For example, under a general accessibility tab on the website, outside the reservation system, the hotel lists as "Accessibility":

31. Merely labelling something "accessible" is a conclusion or opinion and does not permit an independent assessment but require a wheelchair user to hope that the hotel knows what it is talking about.

32. This meager information falls far short of what the ADA requires and does not even come close to meeting the ADA requirement that hotels must not only identify but "describe accessible features in the hotels and guest rooms

offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs." 28 C.F.R. 36.302(e)(1)(ii) (emphasis added to key words).

33. With few exceptions, the hotel has done nothing more than slap the word "accessible" on all the public areas of the hotel:

**Accessibility**                                                                Close ∧

For more information about the physical features of our accessible rooms, common areas, or special services relating to a specific disability, please call +1 415-512-1111.

| Accessible Areas with Accessible Routes from Public Entrance | Accessible Hotel Features | Guest Room Accessibility |
| --- | --- | --- |
| Business Center | Service animals are welcome | Accessible guest rooms with 32" wide doorways |
| Fitness Center | Valet parking for vehicles outfitted for drivers in wheelchairs | Accessible route from public entrance to accessible guest rooms |
| Meeting spaces and ballrooms | Elevators | Alarm clock telephone ringers |
| Pool accessible | | Bathroom grab bars |
| Pool pathway | | Bathtub grab bars |
| Public entrance alternative | | Deadbolt locks, lowered |
| Registration Desk Pathway | | Doors with lever handles |
| Registration desk | | Electrical outlets, lowered |
| Restaurant(s)/Lounge(s) | | Flashing door knockers |
| | | Hearing accessible rooms and/or kits |
| | | Roll-in shower |
| | | Shower wand, adjustable |
| | | TTY/TTD available |
| | | TV with close-captioning |
| | | Toilet seat at wheelchair height |
| | | Transfer shower |
| | | Vanities, accessible |
| | | Viewports, lowered |

34. But *every* hotel has a business centers, front desks, elevators, exercise facilities, a public entrance, a restaurant, and public routes around the facility. Here, the hotel simply listed every common public areas of its hotel and attached the adjective "accessible" to it or "complies with the ADA" type language.

35. Claiming something is "accessible" is a conclusion or opinion. Persons with disabilities do not have to rely upon the naked judgment or conclusions of the hotel. The ADA specifically mandates that hotels must provide specific information

to persons booking their rooms. Under the ADA, the hotel must not only identify but "*describe* accessible features *in the hotels* and guest rooms offered through its reservations service *in enough detail* to reasonably permit individuals with disabilities to *assess independently* whether a *given* hotel or guest room meets *his or her* accessibility needs." 28 C.F.R. 36.302(e)(1)(ii) (emphasis added to key words). Here, plaintiff has been denied the right.

36. As for the guestroom itself, Plaintiff found that the hotel only offered a vague description of the accessibility features of its guestrooms and found that there was insufficient information about the accessible features in the "accessible rooms" at the Hotel to permit him to assess independently whether a given hotel room would work for him.

37. There is no ability to select an accessible room's details to verify its features, but a guest selects a specific room type and is only told that accessible versions exist.

38. Upon selection of that type, one additional bit of information is provided:

> Accessible rooms are guaranteed only if inventory is available at time of booking – otherwise it is upon request only
>
> ☐ Hearing Accessible room      ☐ Mobility Accessible Room with Roll-In Shower,Hearing Accessible room      ☐ Mobility Accessible Room, Tub,Hearing Accessible room

39. Upon selecting one of these room types, no additional information is provided to the guest. Should a guest want any details about the room they are reserving, they are left to look to the general accessibility "tab" outside the reservation system and left to wonder if a particular room type has those features, or if those features will be adequate. There is no indicator to a guest using this reservation system that the information can be found elsewhere.

40. The photo below is another potential source of information regarding accessibility, found under the guestroom description for Superior Room, Guest

1  room, 1 King:



41. This information is essentially useless. Not only does every photo have a disclaimer that reads that the images may not reflect the room features but, for example, this Guest Room, 1 King, the hotel has a photo of an inaccessible tub but simultaneously states that this room offers mobility accessible rooms and accessible rooms with roll in showers.

42. This lack of information – and the conflicting information -- created difficulty for the plaintiff and the idea of trying to book this room -- essentially ignorant about its accessibility -- caused difficulty and discomfort for the Plaintiff and

First Amended Complaint                                            4:21-cv-00011-DMR

deterred him from booking a room at the Palace Hotel.

43. Plaintiff, like any wheelchair user, simply needs to know some basic information (actual data, not adjectives) about the core features so that he can independently assess whether the hotel room works for him. Those core features for the guestroom itself are simply: (1) entrances; (2) maneuvering space at bed; (3) toilet; (4) sink; and (5) bath/shower. That is it. Five critical areas in the guestroom. Plaintiff does not need an exhaustive list of accessibility features. Plaintiff does not need an accessibility survey to determine of a room works for him. Plaintiff, like the vast majority of wheelchair users, simply needs these handful of areas to be described in enough detail to permit him to independently assess that the room works for him and that he can book with confidence.

44. Here, the hotel only provided the following information regarding accessible guest rooms:

**Accessible Room Features**
This room type offers mobility accessible rooms
This room type offers accessible rooms with roll in showers
This room type offers hearing accessible rooms with visual alarms and visual notification devices for door and phone

Lighted makeup mirror
Hair dryer
Robe
Slippers

**Furniture and Furnishings**
Alarm Clock
Safe, in room
Desk, writing / work, electrical outlet
Iron and ironing board

**Food & Beverages**
Room service, 24-Hour
Bottled water, complimentary

**Kitchen Features**
Mini-refrigerator

Palace Hotel, a Luxury Collection Hotel, San Francisco

11

First Amended Complaint                                          4:21-cv-00011-DMR

45.  For the other five core areas: (1) entrances; (2) maneuvering space at bed; (3) toilet; (4) sink; and (5) bath/shower., the hotel simply does not provide description or details that would permit plaintiff—or any wheelchair user—to make an independent assessment about whether it works for them.

46. For the doors, Plaintiff simply needs to know if he can get into the hotel room and into the bathroom. This is a problem that has created tremendous problems for the Plaintiff in the past. A simple statement that the hotel room entrance and interior doors provide at least 32 inches of clearance is enough to provide Plaintiff this critical piece of information about whether he can fit his wheelchair into the hotel rooms.

47. For the bed itself, the only thing plaintiff needs to know (and the only thing regulated by the ADA Standards) is whether he can actually get to (and into) the bed, i.e., that there is at least 30 inches width on the side of the bed so his wheelchair can pull up next to the bed for transfer. This is critical information because plaintiff needs to pull his wheelchair alongside the bed. Without this maneuvering clearance, plaintiff is in trouble. Here, the website says nothing about the accessibility of the bed.

48. For the restroom sink, the two things that will determine whether plaintiff can use the sink from his wheelchair: (1) can he safely get his knees under the toilet? To wit: does the sink provide the knee clearance (27 inches high, 30 inches wide, 17 inches deep) and is any plumbing under the sink wrapped with insulation to protect against burning contact?  The second thing is whether the lavatory mirror is mounted at a height so that wheelchair users can sue it. A simple statement like: "the lavatory sink provides knee clearance of at least 30 inches wide, 27 inches tall and 17 inches deep, all of the under-sink plumbing is wrapped, and the lowest reflective edge of the mirror is no more than 40 inches high." But here, the hotel reservation website says nothing about the accessibility of the sink.

49. For the restroom toilet, plaintiff only needs to know two things that

determine if he can transfer to and use the toilet; (1) that the toilet seat height is between 17-19 inches (as required by the ADA Standards) and (2) that it has the two required grab bars to facilitate transfer. Here, there is no information about the toilet at all. Due to plaintiff's profound disabilities, transferring from wheelchair to toilet is difficult and dangerous for him. He needs a toilet at the correct height and he needs grab bars.

50. For the bathtub, the plaintiff only needs to know a few things: (1) does it have a tub seat as required by the ADA; (2) does it have the required grab bars on the walls; (3) does it have a detachable handheld shower spray unit; and (4) are all the amenities within 48 inches height. Here, though, the reservation website says nothing beyond declaring the tub "accessible."

51. Other accessibility requirements such as slopes of surfaces, whether the hand-held shower wand has a non-positive shut off valve, the temperature regulator, the tensile strength and rotational design of grab bars, and so many more minute and technical requirements under the ADA are beyond what is a reasonable level of detail and Plaintiff does not expect or demand that such information is provided.

52. But because the Defendants have failed to identify and describe the core accessibility features in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his accessibility needs, the Defendants fail to comply with its ADA obligations and the result is that the Plaintiff is unable to engage in an online booking of the hotel room with any confidence or knowledge about whether the room will actually work for him due to his disability.

53. This lack of information created difficulty for the Plaintiff and the idea of trying to book this room -- essentially ignorant about its accessibility -- caused difficulty and discomfort for the Plaintiff and deterred him from booking a room at the Hotel.

54. Plaintiff travels frequently and extensively, not only for non-litigation reasons but also because he is an ADA tester and actively engaged in finding law breaking businesses and hauling them before the courts to be penalized and forced to comply with the law.

55. As he has in the past, Plaintiff will continue to travel to San Francisco on a regular and ongoing basis and will patronize this Hotel once it has been represented to him that the Defendant has changed its policies to comply with the law and to determine if the Hotel is physically accessible as well as complying with required reservation procedures. Plaintiff will, therefore, be discriminated against again, i.e., be denied his lawfully entitled access, unless and until the Defendant is forced to comply with the law.

56. Plaintiff has reason and motivation to use the Defendant's Hotel reservation system and to stay at the Defendant's Hotel in the future. Among his reasons and motivations are to assess these policies and facilities for compliance with the ADA and to see his lawsuit through to successful conclusion that will redound to the benefit of himself and all other similarly situated. Thus, Plaintiff routinely revisits and uses the facilities and accommodations of places he has sued to confirm compliance and to enjoy standing to effectuate the relief promised by the ADA.

57. Plaintiff routinely revisits and uses the facilities and accommodations of places he has sued to confirm compliance and to enjoy standing to effectuate the relief promised by the ADA.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

1. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.
2. Under the ADA, it is an act of discrimination to fail to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges advantages or accommodations to person with disabilities unless the entity can demonstrate that taking such steps would fundamentally alter the nature of those goods, services, facilities, privileges advantages or accommodations. See 42 U.S.C. § 12182(B)(2)(A)(ii).
3. Specifically, with respect to reservations by places of lodging, a defendant must ensure that its reservation system, including reservations made by "any means," including by third parties, shall:
    a. Ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;
    b. Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs; and
    c. Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms

     requested are blocked and removed from all reservations systems.

   *See* 28 C.F.R. § 36.302(e).

4. Here, the defendant failed to modify its reservation policies and procedures to ensure that it identified and described accessible features in the hotels and guest rooms in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs and failed to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

5. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

6. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, § 51(f).

7. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, failing to comply with the ADA with respect to its reservation policies and practices.

8. Because the violation of the Unruh Civil Rights Act resulted in difficulty and discomfort for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. See Civ. Code § 52(a).

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000 for each offense.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code § 52(a).

Dated: March 4, 2021            CENTER FOR DISABILITY ACCESS

                                By:   /s/ Russell Handy
                                Russell Handy
                                Attorney for Plaintiff